IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY SCOTT HATFIELD,<br>　　#57134-177,<br>　　　　MOVANT, | §<br>§<br>§<br>§ | |
| V. | § | CASE NO. 3:20-CV-3544-D-BK |
| | § | (CRIMINAL NO. 3:18-CR-006-D-30) |
| UNITED STATES OF AMERICA,<br>　　RESPONDENT. | §<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition on the *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by Movant Jeffrey Scott Hatfield. As detailed herein, the motion should be **DENIED**.

### I. BACKGROUND

Pursuant to a plea agreement that contained an appeal waiver, Hatfield pled guilty to possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1)&(b)(1)(C). Crim. Doc. 1089. He was sentenced to 200 months' imprisonment. Crim. Doc. 1407.

Hatfield filed a direct appeal. Crim. Doc. 1484; *United States v. Hatfield*, No. 19-10710 (5th Cir. Mar. 27, 2020). His appellate counsel moved for leave to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Crim. Doc. 1688 at 1; *see also United States v. Jeffrey Scott Hatfield*, No. 19-10710 (5th Cir. Mar. 27, 2020). The Court of Appeals for

the Fifth Circuit agreed "with counsel's assessment that the appeal presents no nonfrivolous issue for appellate review," and dismissed the appeal. Crim. Doc. 1688 at 1-2; *see also United States v. Jeffrey Scott Hatfield*, No. 19-10710 (5th Cir. Mar. 27, 2020).

Hatfield subsequently filed this Section 2255 motion. He claims that: (1) his appellate counsel was ineffective for filing an *Anders* brief instead of challenging his importation enhancement; (2) his trial counsel was ineffective for not challenging his premises and firearm enhancements; and (3) his trial counsel was ineffective for not seeking a mitigating-role reduction. *See* Doc. 2 at 4-8. The Government filed a response, but Hatfield did not file a reply.

## II.  ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a petitioner stands fairly and finally convicted. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). Under 28 U.S.C. § 2255, a petitioner can collaterally challenge his conviction only on constitutional or jurisdictional grounds. *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id*. at 697. To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There

is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* Moreover, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The same two-pronged standard for evaluating ineffective assistance claims against trial counsel announced in *Strickland* applies to complaints about the performance of counsel on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that a petitioner arguing ineffective assistance by his appellate counsel must establish both (1) that his appellate counsel's performance was objectively unreasonable and (2) that there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal).

### A. Ineffective Assistance of Appellate Counsel

Hatfield claims his appellate counsel was ineffective for not arguing that the district court improperly applied a two-level importation enhancement pursuant to Section 2D1.1(b)(5) of the United States Sentencing Guidelines, which, as relevant here, is appropriate when the offense involved the importation of methamphetamine. *See* doc. 2 at 4-5. Hatfield, however, waived his right to challenge his sentence on direct appeal, except in very limited circumstances not applicable here. *See* Crim. Doc. 1089 at 6. Such waivers are enforceable in the ineffective assistance of counsel context unless the claim concerns the knowing and voluntary nature of the waiver itself. *See*, *e.g.*, *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("We will follow this weight of authority and hold that an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself.").

Hatfield does not challenge the validity of his waiver. *See generally* Doc. 2. He also does not address how his claim can survive his appellate waiver. Thus, appellate counsel correctly concluded that there was no non-frivolous issue warranting briefing on the merits. *See Smith*, 528 U.S. at 285 (when a petitioner asserts that appellate counsel erroneously failed to file a merits brief, he can satisfy the first part of the *Strickland* test by showing that a reasonably competent attorney would have found that at least one of his claims presented a non-frivolous issue).

Even if not waived, Hatfield's claim is meritless. He argues that the importation enhancement was wrongly imposed because it was based on inappropriate stereotypes, namely, that because the methamphetamine was pure and was obtained from a person of Mexican descent, it was imported. Doc. 2 at 4-5. He relies on *United States v. Nimerfroh*, 716 F. App'x 311, 316 (5th Cir. 2018) (per curiam), in which the Fifth Circuit found that an importation enhancement was improper when the only evidence that the drug was imported was the defendant's statement that he was dealing with the cartel. Doc. 2 at 5. The court held that insufficient to support the enhancement since even if the reference to the cartel meant the Mexican Cartel, it said "nothing about where the cartel's activities took place, nor does it speak to where the methamphetamine came from and whether it was imported." *Id.* at 316.

Hatfield's case is distinguishable, however, as no such dearth of support for the enhancement is present here. The Court did not rely merely on a vague cartel reference, but implicitly found credible the statement of a confidential informant that Hatfield obtained some portion of the methamphetamine that he distributed from a Mexican source of supply. Crim. Doc. 1360-1 at 1. Moreover, the methamphetamine's purity—99 percent—was also indicative of importation and supported the informant's assertion. Crim. Doc. 1360-1 at 2. The appellate

court has previously upheld enhancements on similar bases. *See United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014) ("Because the methamphetamine Foulks possessed was imported from Mexico, the enhancement was properly applied."); *United States v. Arayatanon*, 980 F.3d 444, 452 (5th Cir. 2020) (finding that the district court could have determined by a preponderance of the evidence that the methamphetamine was imported because it was 100% pure and DEA agents had advised the probation officer that the methamphetamine was likely imported because "there are no known labs in the United States that can manufacture methamphetamine of this purity level"). Consequently, Hatfield's claim that his appellate counsel was ineffective also lacks merit.

### B. Ineffective Assistance of Trial Counsel

Hatfield claims that his trial counsel was ineffective for "failing to object to firearm enhancement, maintaining premises, and failing to call [him] to stand." Doc. 2 at 6 (errors in original). He contends his trial counsel also should have sought a mitigating-role reduction under Guidelines Section 3B1.2. *See* Doc. 2 at 8

Section 2D1.1(b)(12) of the Sentencing Guidelines provides a two-level enhancement of a defendant's offense level if the defendant "knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance…" U.S.S.G. § 2D1.1(b)(12) cmt. n.17. And Section 2D1.1(b)(1) provides for a two-level enhancement "if a dangerous weapon (including a firearm) was possessed" in connection with the drug offense. Although the enhancements were not calculated in the original PSR, the were included, as a result of the Government's subsequent objection, in the second addendum to the PSR. *See* Crim. Doc. 1360-1.

Contrary to Hatfield's argument, trial counsel indeed objected to the application of both enhancements in his response to the Government's objections to the original PSR (Crim. Doc. 1355) and at the sentencing hearing (Crim. Doc. 1509 at 5-10).  Of note, he argued that the apartment that served as the predicate for the premises enhancement and at which the police found an open safe containing a loaded gun, methamphetamine, and drug paraphernalia, was not Hatfield's residence and instead belonged to Christy Dillon, Hatfield's acquaintance.  Crim. Doc. 1355 at 2.  Hatfield's trial counsel argued at sentencing—just as Hatfield does here—that the fact that the police gave a receipt of the searched property to Dillon, who later gave it to Hatfield, who had it in his possession when he was arrested the day after the search, did not demonstrate that either the safe or the firearm inside belonged to Hatfield.  Crim. Doc. 1355 at 2. Thus, to the extent that Hatfield is claiming his trial counsel was ineffective for not "objecting" to the firearm and premises enhancements, the claim lacks merit.

Hatfield actually appears to argue that his trial counsel should have called him to testify because he could have offered "evidence" that he did not live at or store property at the apartment in question.  Doc. 2 at 6.  But Hatfield does not say what evidence he would have presented or what the substance of his testimony would have been.  This claim is far too speculative to support habeas relief.  The Court was squarely presented with Hatfield's argument that he lacked the requisite connection to the apartment in question.  *See* Crim. Doc. 1509 at 6-7; (argument at sentencing); Crim. Doc. 1355 at 2 (response to the Government's objections to the PSR).  The Court overruled Hatfield's trial counsel's objections on these issues, and Hatfield does not say here what evidence or testimony he would have presented that would have resulted in a different outcome.  *See* Crim. Doc. 1509 at 14 (overruling objection to the enhancements).

Finally, Hatfield claims that his trial counsel was ineffective for not seeking a mitigating-role reduction. *See* Doc. 2 at 8. He notes that he "was among 56 other named defendants in a large-scale methamphetamine conspiracy" and that "with the exception of defendant and a few others," the other defendants were in or associated with gangs. Doc. 2 at 8. To obtain the mitigating role adjustment, the defendant must show by a preponderance of the evidence: (1) the culpability of the average participant in the criminal activity; and (2) that he was substantially less culpable than that participant. *See*, *e.g.*, *Unites States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016).

Hatfield fails to establish prejudice in relation to this claim because he fails to show it was reasonably likely that the Court would have granted a mitigating role reduction even if his trial counsel had sought it. While Hatfield describes his role as a "minimal" participant in the crime (Doc. 2 at 8), the PSR, which the Court accepted (Crim. Doc. 1408), described him as an "average customer[] and distributor[] of methamphetamine and other narcotics during this conspiracy." Crim. Doc. 1244-1 at 9. Hatfield was specifically identified as a source of supply who conducted and directed multiple methamphetamine transactions, supplied methamphetamine to others in the conspiracy, stored methamphetamine at his residence, and always possessed a pound of methamphetamine. Crim. Doc. 1244-1 at 9-10; Crim. Doc. 1360-1 at 2, 3.

Further, while Hatfield's trial counsel did not seek a mitigating-role reduction, he did seek a downward variance, arguing that Hatfield had a "very small" role in the conspiracy. Crim. Doc. 1509 at 5-6, 20. The Court rejected this argument, and Hatfield presents nothing in this Section 2255 motion to show that the Court would have been more receptive to the argument had it been framed as a request for a mitigating-role reduction.

Page **7** of **8**

At bottom, all of Hatfield's sentence-related ineffective assistance claims lack merit because he fails to show that he received a longer sentence because of the supposed errors of his trial counsel. *See*, *e.g.*, *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001) (holding that a defendant establishes *Strickland* prejudice in the sentencing context when his counsel's errors result in a longer sentence).

### III.  CONCLUSION

Hatfield's Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** ON October 27, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).